## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| **AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a Foreign Company** | |
| | **Case No.** |
| **Plaintiff,** | |
| **vs.** | |
| **SUPERIOR PHARMACY, LLC, a Florida Limited Liability Company, HILDA ANADIUME, IKE OKEKE, YVONNE OKEKE, and FLORIDA FIRST FINANCIAL GROUP, INC., a Florida Corporation, Individually and as the Representative of a Class of Similarly-Situated Persons,** | |
| **Defendants.** | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA ("American Casualty"), by and through its counsel, and for its Complaint for Declaratory Judgment against Defendants SUPERIOR PHARMACY, LLC, ("Superior Pharmacy"), HILDA ANADIUME ("Anadiume"), IKE OKEKE ("Mr. Okeke"), YVONNE OKEKE ("Mrs. Okeke") and FLORIDA FIRST FINANCIAL GROUP, INC., Individually and as the Representative of a Class of Similarly-Situated Persons, ("Florida First") upon knowledge, information, and belief, alleges as follows:

### NATURE OF THE ACTION

1.      This is an insurance coverage action seeking declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal

Rules of Civil Procedure. American Casualty seeks a determination of the parties' rights and obligations under insurance policies issued by American Casualty to Superior Pharmacy in connection with a putative class action lawsuit filed by Florida First against Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke.

2.      On our about January 11, 2011, Florida First filed a Class Action Complaint against Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke in the lawsuit styled, *Florida First Financial Group, Inc., individually and as the representative of a class of similarly-situated persons v. Superior Pharmacy, LLC, Ike C. Okeke, Yvonne Okeke, and Hilda Anadiume*, Case No. 11000731, in the 13th Judicial Circuit Court, Hillsborough County, Florida (the "*Florida First* lawsuit" or "underlying lawsuit"), alleging Count I—Violations of Telephone Consumer Protection Act, 47 U.S.C. § 227, (the "TCPA") and Count II—Conversion.

3.      American Casualty issued Policy No. CNP 2090658080 to Superior Pharmacy with limits of liability of $2 Million Personal & Advertising Injury, subject to a $4 Million General Aggregate, for consecutive one-year policy periods from June 18, 2006 through June 18, 2011 (collectively the "Policies").

4.      An actual, justiciable controversy exists between American Casualty and the Defendants regarding whether American Casualty has a duty to defend or indemnify Superior Pharmacy, Anadiume, Mr. Okeke,  and Mrs. Okeke for the claims in the *Florida First* lawsuit. American Casualty herein seeks a declaration that:

(a)      American Casualty has no duty to defend Superior Pharmacy, Anadiume, Mr. Okeke,  and Mrs. Okeke against the claims asserted in the *Florida First* lawsuit, because there is no potential for insurance coverage under the Policies issued by American Casualty to Superior Pharmacy; and

(b)      American Casualty has no duty to indemnify Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke for the claims and damages in the *Florida First* lawsuit.

## PARTIES

5.      American Casualty is incorporated in the State of Pennsylvania, with its principal place of business in the State of Illinois.

6.      Upon information and belief, Superior Pharmacy is incorporated in the State of Florida and maintains its principal place of business in Tampa, Florida.

7.      Upon information and belief, and at all times pertinent, Hilda Anadiume was an officer of Superior Pharmacy, was domiciled in the State of Florida, and was a citizen of the State of Florida.

8.      Upon information and belief, and at all times pertinent, Ike Okeke was an officer of Superior Pharmacy, was domiciled in the State of Florida, and was a citizen of the State of Florida

9.      Upon information and belief, and at all times pertinent, Yvonne Okeke was an officer of Superior Pharmacy, was domiciled in the State of Florida, and was a citizen of the State of Florida

10.      Upon information and belief, Florida First is incorporated in the State of Florida with its principal place of business in Tampa, Florida.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332, 2201, and 2202, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

12.      An actual controversy exists between the parties as to whether the Policies afford coverage, for defense and indemnity, to Superior Pharmacy, Anadiume, Mr. Okeke,  and Mrs.

Okeke in connection with Florida First's claims in the *Florida First* lawsuit.   Florida First is named as defendant in this action to the extent that Florida First has an interest in the outcome of this declaratory judgment action.

13.     Venue is proper in this Court pursuant 28 U.S.C. § 1391, because Defendants reside in Florida, and contracted business within the State of Florida, or were incorporated under the laws of Florida with their principal place of business in Florida.   Furthermore, the events giving rise to the *Florida First* lawsuit against Superior Pharmacy, Anadiume, Mr. Okeke,  and Mrs. Okeke took place within the Middle District of Florida.

## THE UNDERLYING LAWSUIT

14.     On our about January 11, 2011, Florida First filed a Class Action Complaint (the "Class Action Complaint") against Superior Pharmacy, Anadiume, Mr. Okeke,  and Mrs. Okeke (collectively "Underlying Defendants") in the *Florida First* lawsuit. A copy of Florida First's Class Action Complaint in the *Florida First* lawsuit is attached hereto as "**Exhibit A**."

15.     On our about on January 24, 2011 and February 8, 2011, Florida First served the Class Action Complaint on the Underlying Defendants in the *Florida First* lawsuit.   Copies of Florida First's Summonses for service of the Class Action Complaint on Underlying Defendants in the *Florida First* lawsuit and the March 7, 2013, circuit court docket in the *Florida First* lawsuit identifying "Summons Returned Served" on January 24, 2011 and February 8, 2011, are attached hereto as composite "**Exhibit B**."

16.     In the Class Action Complaint, Florida First, on behalf of itself and all others similarly situated, asserts the following causes of action against the Underlying Defendants: Count I—Violations of Telephone Consumer Protection Act, 47 U.S.C. § 227, (the "TCPA") and Count II--Conversion. *See* Ex. A.

17.     In the Class Action Complaint, Florida First claims that Anadiume, Mr. Okeke, and Mrs. Okeke were members, managers and control persons of Superior Pharmacy. *See* Ex. A., ¶9.

18.     In the Class Action Complaint, Florida First alleges that it brings the TCPA and conversion claims on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) with respect to whom Defendants did not have prior express permission or invitation for the sending of such faxes, and (4) with whom Defendants did not have an established business relationship (the "Class"), and (5) which did not display a proper opt out notice.

*See* Ex. A., ¶19.

19.     On or about January 3, 2007, January 10, 2007, January 17, 2007 and January 24, 2007, Underlying Defendants allegedly transmitted by telephone facsimile machine the same facsimile four (4) times to Florida First. *See* Ex. A., ¶11.

20.     According to the Class Action Complaint, Underlying Defendants' "unsolicited faxes allegedly used the paper, toner and fax machine of [Florida First] and Class members, causing damages to [Florida First] and Class members." *See* Ex. A., ¶16.

21.     In the Class Action Complaint, Florida First asserts that Underlying Defendants "faxed the same or similar unsolicited facsimiles to Plaintiff and more than 50 other recipients without first receiving the recipients' express permission or invitation. Defendants' facsimiles did not display a proper opt out notice as required by 64 C.F.R. 1200." *See* Ex. A., ¶17.

22.     In Count I—Violations of Telephone Consumer Protection Act, 47 U.S.C. §227, of the Class Action Complaint, Florida First claims that Underlying Defendants "violated the 47 U.S.C. § 227, et. seq. by sending advertising faxes (such as Exhibit A [to the Class Action

Complaint]) to [Florida First] and the other members of the Class without first obtaining their prior express invitation or permission and by not displaying the proper opt out notice as required by 64 C.F.R. 1200." *See* Ex. A., ¶32.

23.     According to Count I of the Class Action Complaint, the TCPA is a strict liability statute. *See* Ex. A., ¶33.

24.     In Count I of the Class Action Complaint, Underlying Defendants "knew or should have known that, [Florida First] and the other Class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods or services." *See* Ex. A., ¶34.

25.     In Count II—Conversion of the Class Action Complaint, Florida First asserts that "[b]y sending Plaintiff and the other Class members unsolicited faxes, Defendants improperly converted their fax machines, toner and paper to their own use"; converted Florida First's employees' time to Underlying Defendants' own use; and Underlying Defendants "knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization." *See* Ex. A., ¶¶48, 49, 51.

26.     In the Prayer for Relief of the Class Action Complaint, Florida First demands a judgment in its favor that Underlying Defendants violated the TCPA and committed conversion, $500.00 in damages for each TCPA violation, an injunction prohibiting Underlying Defendants from engaging in the alleged statutory violations, attorneys' fees, and costs. *See* Ex. A, Prayer for Relief.

## NOTICE OF FLORIDA FIRST'S CLAIM AND THE UNDERLYING LAWSUIT

27.     Approximately two years after the *Florida First* lawsuit was served on the Underlying Defendants, on or about January 15, 2013, Superior Pharmacy and Anadium, through

their defense counsel, Jacques Darius, Esq., and insurance agent, Adcock & Adcock Insurance Agency, placed American Casualty on notice of Florida First's claim and the *Florida First* lawsuit.

28.     Mr. Okeke and Mrs. Okeke did not place American Casualty on notice of Florida First's claim and the *Florida First* lawsuit.

29.     On January 15, 2013, American Casaulty received an e-mail from Mr. Darius, on behalf of Superior Pharmacy and Anadium, requesting insurance disclosure from American Casualty in connection with the *Florida First* lawsuit.

30.     Pursuant to American Casaulty's request, Mr. Darius provided American Casualty with a copy of the Summonses and Class Action Complaint in the *Florida First* lawsuit on January 17, 2013.

31.     On February 14, 2013, American Casualty provided Superior Pharmacy and Anadium with statutory insurance disclosure, with its reservation of rights under the Policies.

32.     By a February 21, 2013 reservation of rights letter, American Casualty agreed to defend Underlying Defendants in the *Florida First* lawsuit pursuant to a reservation of rights under the Policies. A copy of American Casualty's February 21, 2013 reservation of rights letter is attached hereto as "**Exhibit C**."

## INSURANCE POLICIES

33.     American Casualty issued commercial general liability insurance to Superior Pharmacy under Policy No. CNP 2090658080, effective for consecutive one-year policy periods from June 18, 2006, to June 18, 2011 (collectively the "Policies"). A copy of American Casualty Policy No. CNP 2090658080, effective from June 18, 2006, to June 18, 2007, ("06-07 Policy") is attached as "**Exhibit D**." A copy of American Casualty Policy No. CNP 2090658080, effective

from June 18, 2007, to June 18, 2008, ("07-08 Policy") is attached as **Exhibit E.**" A copy of the American Casualty Policy No. CNP 2090658080, effective from June 18, 2008, to June 18, 2009, ("08-09 Policy") is attached as **Exhibit F.**" A copy of American Casualty Policy No. CNP 2090658080, effective from June 18, 2009, to June 18, 2010, ("09-10 Policy") is attached as **Exhibit G.**" A copy of American Casualty Policy No. CNP 2090658080, effective from June 18, 2010, to June 18, 2011, ("10-11 Policy") is attached as **Exhibit H.**"

34.     The Policies include limits of liability of $2 Million Personal & Advertising Injury, subject to a $4 Million General Aggregate.

35.     The 06-07 Policy, 07-08 Policy, 08-09 Policy, and 09-10 Policy include the same Businessowners Liability Coverage Form, Form No. SB-300000-A (Ed. 01/06), and the 10-11 Policy includes Businessowners Liability Coverage Form, Form No. SB-300000-B09 (Ed. 12/08).   Copies of Businessowners Liability Coverage Form, Form No. SB-300000-A (Ed. 01/06) and Businessowners Liability Coverage Form, Form No. SB-300000-B09 (Ed. 12/08) are attached hereto as composite **"Exhibit I."**

36.     The Policies contain the following relevant provisions in connection with Coverage A, which provides Business Liability insurance for "bodily injury" and "property damage":

    **A.**    **Coverages**

        **1.**    **Business Liability (Bodily Injury, Property Damage, Personal and Advertising Injury)**

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the

insured against any "suit' seeking damages for "bodily injury," "property damage" or "personal and advertising injury," to which this insurance does not apply...

\* \* \*

b.    This insurance applies:

(1)    To "bodily injury" and "property damage" only if:

(a)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory';

(b)    The "bodily injury" or "property damage" occurs during the policy period;

(c)    Prior to the policy period, no insured listed under Paragraph C.1. Who Is Version 1.1 An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

(2)    To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

*See* Exs. D-I, Businessowners Liability Coverage Form, Section A, Pg. 1.

37.    The Policies contain the following definition of "Property Damage":

17.     "Property damage" means:

    a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*See* Exs. D-I, Businessowners Liability Coverage Form, Section F(17), pg. 15.

38.     The Policies contain the following definition of "Occurrence":

    13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*See* Exs. D-I, Businessowners Liability Coverage Form, Section F(14), pg. 14.

39.     The Policies contain the following definition of "personal and advertising injury":

    14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution;

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

*See* Exs. D-I, Businessowners Liability Coverage Form, Section F(14), pg. 14.

40. The Policies contain the following "Expected Or Intended Injury" exclusion applicable to Business Liability Coverage:

**1.      Applicable to Business Liability Coverage**

This insurance does not apply to:

**a.      Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

*See* Exs. D-I, Businessowners Liability Coverage Form, Section B(1)p, pg. 3.

41. The Policies contain the following "Personal and Advertising Injury" exclusion, which states, in pertinent part, as follows:

**1.      Applicable To Business Liability Coverage**

This insurance does not apply to:

\* \* \*

**p. Personal And Advertising Injury**

"Personal and advertising injury":

**(1)**    Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

11

**(2)**    Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

\* \* \*

**(4)**    Arising out of a criminal act committed by or at the direction of any insured;

\* \* \*

*See* Exs. D-I, Businessowners Liability Coverage Form, Section B(1)p, pgs. 7-8.

42.    The Policies contain the following "Violation of Statutes" exclusion:

**EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION**

\* \* \*

**A.**    **The following exclusion is added to Paragraph 2., Exclusions of Section I –   Coverage A – Bodily Injury And Property Damage Liability:**

q.    This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)**    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)**    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)**    Any statute, ordinance or regulation, other than the TCPA or CAN- SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**(15)** This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN- SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

*See* Exs. D-H, "Exclusion-Violation of Statutes that Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information" Endorsement, Form No. SB-147078-A (Ed. 01/06). A copy of the "Exclusion-Violation of Statutes that Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information" Endorsement, Form No. SB-147078-A (Ed. 01/06), is attached hereto as **"Exhibit J."**

43. The Policies contain a "Who Is An Insured" provision, which states, in pertinent part, as follows:

**C.  Who Is An Insured**

**1.** If you are designated in the Declarations as:

      **d.**    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

  **2.**    Each of the following is also an insured:

      **a.**    Your ... "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business...

* * *

*See* Exs. D-I, Businessowners Liability Coverage Form, Section C, pg. 9.

44.    The Policies contain a "Duties In the Event of Occurrence, Offense, Claim or Suit" provision, which states as follows:

  **2.**    **Duties In The Event Of Occurrence, Offense, Claim or Suit**

    a.    You must see to it that we are notified as soon as practicable of an "occurrence" of an offense which may result in a claim.  To the extent possible, notice should include:

        (1)    How, when and where the "occurrence" or offense took place;
        (2)    The names and address of any injured persons and witnesses; and
        (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.    If a claim is made or "suit" is brought against any insured, you must:

14

(1)    Immediately record the specifics of the claim or "suit" and the date received: and

(2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices summonses or legal papers received in connection with the claim or "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation, settlement or defense of the claim or "suit", and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.    No insured will, except at that insured's own cost, voluntarily make payment, assume any obligation, or incur any expense, other than first aid, without our consent.

*See* Exs. D-I, Businessowners Liability Coverage Form, Section E(2), pgs. 11-12.

## COUNT I
### [For Declaratory Relief—Duty to Defend]

45.    American Casualty hereby incorporates and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

46.    American Casualty does not owe Superior Pharmacy, Anadiume, Mr. Okeke, or Mrs. Okeke a duty to defend in connection with the *Florida First* lawsuit for the following reason:

the Violation of Statutes Exclusion contained in the Policies excludes coverage for "property damage" and "personal and

advertising injury" arising directly or indirectly out of any action
or omission that violates or is alleged to violate the TCPA.

*See* Exs. D-J, "Exclusion-Violation of Statutes that Govern E-Mails, Fax, Phone Calls or Other

Methods of Sending Material or Information" Endorsement.

    47.    In addition, American Casualty reserved its right to disclaim any obligation to

defend or indemnify Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke in connection

with the *Florida First* lawsuit for the following reasons, among others:

    a.    the *Florida First* lawsuit does not allege an "occurrence" as defined in the Policies;

    b.    the Policies exclude coverage for an "expected or intended injury";

    c.    the Policies exclude "personal and advertising injury" coverage for "oral or written publication of material whose first publication took place before the beginning of the policy period";

    d.    the Policies expressly exclude "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

    e.    the Policies exclude coverage for "personal and advertising injury" that arises out of a criminal act committed by or at the direction of the insured.

    f.    statutory penalties are not considered damages under Policies as a matter of public policy;

    g.    the Policies only apply to risks that are fortuitous and would not apply to risks that an insured knew or should have known were substantially certain to occur;

    h.    Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke did not provide timely notice of the *Florida First* lawsuit;

       i.      Anadiume, Mr. Okeke, and/or Mrs. Okeke may not qualify as insureds under the "Who Is An Insured" provision of the Policies.

       j.      the relevant "personal and advertising injury" definition only pertains to "a person's right of privacy", and not to privacy violations purportedly asserted on behalf of corporations, such as Florida First.

48.     Based on the Violation of Statutes Exclusion, American Casualty does not owe Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke a duty to defend under the Businessowners Liability Coverage contained in the Policies.

49.     Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke have requested that American Casualty defend and indemnify them in connection with the *Florida First* lawsuit.

50.     An actual controversy within the meaning of 28 U.S.C. § 2201 now exists between American Casualty and Defendants concerning whether the Policies require American Casualty to continue to defend Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke in the *Florida First* lawsuit.

51.     Pursuant to 28 U.S.C. §§ 2201 and 2202, American Casualty seeks a judicial declaration that American Casualty has no duty to defend Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke in connection with the *Florida First* lawsuit pursuant to the provisions of the Policies.

52.     In addition to the foregoing provisions, American Casualty pleads all other conditions, terms, limitations, definitions and exclusions of the Policies that may also be found to be applicable as American Casualty's investigation of this matter continues, and reserves the right to amend its Complaint for Declaratory Relief as additional and/or more specific information becomes available.

## COUNT II
### [For Declaratory Relief—Duty to Indemnify]

53.     American Casualty hereby incorporates and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

54.     For the same reasons set forth in the preceding paragraphs, the Policies do not impose an obligation on American Casualty to indemnify Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke in connection with the *Florida First* lawsuit.

55.     An actual controversy within the meaning of 28 U.S.C. § 2201 now exists between American Casualty and Defendants concerning whether the Policies require American Casualty to indemnify Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke in connection with the *Florida First* lawsuit.

56.     Pursuant to 28 U.S.C. §§ 2201 and 2202, American Casualty seeks a judicial declaration that American Casualty has no duty to indemnify Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke in connection with the *Florida First* lawsuit pursuant to the provisions of the Policies.

57.     In addition to the foregoing provisions, American Casualty pleads all other conditions, terms, limitations, definitions and exclusions of the Policies that may also be found to be applicable as American Casualty's investigation of this matter continues, and reserves the right to amend its Complaint for Declaratory Relief as additional and/or more specific information becomes available.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, American Casualty, prays for a judgment that:

(a)     American Casualty has no duty to defend Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke against the claims asserted in the *Florida First* lawsuit;

(b)     American Casualty has no duty to indemnify Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke for the claims asserted in the *Florida First* lawsuit; and

(c)     for such other relief as this Court deems just and proper, including but not limited to, an award of fees and costs in this action and reimbursement of defense costs already incurred on behalf of Superior Pharmacy, Anadiume, Mr. Okeke, and Mrs. Okeke in the *Florida First* lawsuit.

Dated: **March 7, 2013**

Respectfully submitted,

**JULIE K. LINHART, ESQ.**
Fla. Bar No. 0571601
E-mail:  Julie.Linhart@cna.com
**COLLIAU CARLUCCIO KEENER
MORROW PETERSON & PARSONS**
4631 Woodland Corporate Blvd., Suite 315
Tampa, Florida  33614
Telephone: (813) 880-5165
Direct Line: (813) 880-5168
Facsimile: (312) 260-6859
**Attorneys for Plaintiff American
Casualty Company of Reading,
Pennsylvania**