## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 8:13-cv-622-JDW-TBM Dispositive Motion |
| SUPERIOR PHARMACY, LLC, HILDA ANADIUME, IKE OKEKE, YVONNE OKEKE, and FLORIDA FIRST FINANCIAL GROUP, INC. | ) ) ) ) ) | |
| Defendants. | ) | |

### DEFENDANTS FLORIDA FIRST FINANCIAL GROUP, INC., SUPERIOR PHARMACY, LLC, HILDA ANADIUME, IKE OKEKE, AND YVONNE OKEKE'S JOINT RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff American Casualty Company of Reading, PA ("American Casualty") asks this Court to grant it summary judgment on all of its coverage obligations to its insureds Superior Pharmacy, LLC, Hilda Anadiume, Ike Okeke, and Yvonne Okeke (collectively, the "Insureds") with respect to the underlying action filed by Florida First Financial Group ("Florida First").[1] Unfortunately for American Casualty, the Florida Supreme Court has held that the policy American Casualty issued the Insureds covers the underlying claims, and numerous courts have held that the exclusion on which American Casualty bases the bulk of its motion does not absolve it of the duty to defend its insureds because the underlying action still raises the potential for covered claims.

In any event, however, the declaration American Casualty seeks is moot and premature because (1) the underlying action has not been resolved and therefore there is no judgment for American Casualty to potentially indemnify its Insureds for; and (2) as it concedes, American Casualty has arranged with the Insureds other insurers (former defendants Maryland Casualty

---

[1] The Insureds and Florida First are collectively referred to as Defendants.

1

Company and Old Dominion Insurance Company[2]) that the other insurers would pay for the Insureds' defense in the underlying action. Therefore, American Casualty no longer has any stake in the question of its duty to defend, rendering that question moot. The question of its duty to indemnify is premature unless and until there is a judgment against the Insureds. The Court should deny the motion and stay the action pending the outcome of the underlying case.

**UNDISPUTED MATERIAL FACTS**

## I.     THE UNDERLYING COMPLAINT

1.     On January 18, 2011, Florida First instituted a civil class action captioned "*Florida First Financial Group, Inc. v. Superior Pharmacy, LLC*," Case No. 11000731, in the Circuit Court of Hillsborough County, Florida (the "Underlying Action").[3]

2.     In the Underlying Action, Florida First seeks relief on behalf of itself and classes of similarly situated persons who also received unsolicited faxes from the Insureds. *See Underlying Complaint* (Dkt. 1-2).

3.     It alleged that the Insureds faxed unsolicited facsimiles to Florida First and at least 50 other recipients. *Id.*, ¶ 17.

4.     In Count I, the Underlying Complaint alleged that the Insureds violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending unsolicited junk fax advertisements to Florida First and hundreds of others. *Id.*, ¶¶ 28-36.

5.     The TCPA count sought relief on behalf of a class of:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express

---

[2] Oddly, Old Dominion filed a joinder to the instant motion despite being dismissed from the case on May 13, 2014. (Dkt. 83).

[3] Florida First had filed a prior action in 2009. While the effect of the prior action on the Insureds' statute of limitations defense is being litigated in the Underlying Action, it does not affect the issues here.

permission or invitation to send those faxes, (4) with whom Defendants did not have an established business relationship, and (5) which did not display a proper opt out notice. [*Id.*, ¶ 19]

6. In Count II, the Underlying Action sought damages based on the Insureds's commission of common law conversion. *Id.*, ¶¶ 38-52.

7. Like the TCPA claims, Florida First also brought conversion claims on behalf of a class of victims. *Id.* Here, the class was broader: "All persons who, on or after a date six years prior to the filing of this action were sent telephone facsimile messages by or on behalf of Defendants." *Id.*, ¶ 38.

8. This class was not limited to faxes that advertised the commercial availability of any property, goods, or services; were sent to persons with whom Defendants did not have an established business relationship; or that did not display a proper opt out notice. *Id.*

9. In other words, the conversion class included faxes that did not violate the TCPA. *Id.*

10. The Underlying Complaint further alleged that the Insureds knew or should have known that Florida First and the other class members had not given express invitation or permission for the Insureds to send faxes. *Id.*, ¶¶ 34, 49.

## II. THE UNDERLYING ACTION

11. The Underlying Action remains pending.

12. American Casualty acknowledges that it has withdrawn from the Insureds' defense in the Underlying Action based on an agreement with the other insurers. *See* American Casualty's Motion at p. 11 #18 and Exhibit 7 thereto.

## III. THE AMERICAN CASUALTY POLICIES

13. American Casualty issued a series of annual Commercial General Liability Insurance Policies numbered B 2090658080 (the "Policies"), covering the period of June 18, 2006 to June 18,

2011. *See* Dkt. 1-5 through 1-9.

14. Defendants adopt and incorporate Paragraphs 8-12 of American Casualty's Statement of Facts, including citations.

15. The Policies do not define "accident." *See* Dkt. 1-5 through 1-9, *generally*.

## ARGUMENT

## I. THERE IS NO PRESENT JUSTICIABLE CONTROVERSY.

American Casualty's own motion illustrates that it lacks standing to litigate the duty to defend. It is premature to reach the question of duty to indemnify prior to an underlying judgment. Therefore, the Court should decline to decide this motion, stay the case until there is an underlying judgment, and, if necessary, examine duty to indemnify at that time.

As the Court will recall, American Casualty brought in the Other Insurers in order to litigate who was responsible for what portion of defense costs for the Underlying Action—an action that destroyed the subject matter jurisdiction of the Court. Rather than proceed with briefing on the jurisdictional question, however, American Casualty settled its differences with the Other Insurers and dismissed them. Dkt. 82 and 83. Pursuant to that settlement, the Other Insurers agreed to *take full responsibility for the Insureds' defense in the Underlying Action*. As American Casualty concedes, "[b]y letter dated May 7, 2014, ACCO withdrew its defense of Underlying Defendants on grounds that the Old Dominion CGL Policy and Maryland CGL Policy effective in January 2007 provide primary insurance to Defendants." American Casualty Brief at p. 11. In other words, American Casualty succeeded in its contention that is effectively an excess insurer with respect to the Underlying Action and therefore does not have a responsibility to provide a defense.

As such, it should not be permitted to obtain a declaration from this Court regarding whether it would have to defend under the hypothetical scenario wherein it was a primary insurer. "The Constitution permits this Court to decide legal questions only in the context of actual 'Cases'

or 'Controversies.'" *Alvarez v. Smith*, 558 U.S. 87, 130 S.Ct. 576, 580 (2009), *citing* U.S. Const., Art. III, § 2. "An 'actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Id.*, *quoting Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) and *Steffel v. Thompson,* 415 U.S. 452, 459, n. 10 (1974). The Court may not issue declarations as to issues that are moot, and may not issue advisory opinions. "[A] federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1166 (11th Cir. 2012), *quoting Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12 (1992).

Indeed, American Casualty itself successfully obtained a declaration from this Court in 2009 that the duty to defend "does not extend to an excess insurer when a primary insurer has a duty to defend." *American Cas. Co. of Reading Pennsylvania v. Health Care Indem., Inc.*, 613 F.Supp.2d 1310, 1322 (M.D. Fla. 2009), *quoting U.S. Fire Ins. Co. v. Freedom Village of Sun City Center, Ltd.*, 279 Fed.Appx. 879, 881 (11th Cir. 2008). Here, the Other Insurers have apparently agreed that they are primary and American Casualty is excess and have taken on the Insureds' defense in the Underlying Action. Therefore, the question of whether the Policies obligate American Casualty to defend is moot.

Moreover, it is black letter law that litigation of the duty to indemnify is premature until there is an underlying judgment that requires indemnification. The duty to indemnify is determined by the actual facts established at trial, through summary judgment or in settlement, in the underlying litigation, something that has not yet happened in the Underlying Action here. *See Axis Surplus Ins. Co. v. Contravest Constr. Co.*, 921 F.Supp.2d 1338, 1344-45 (M.D. Fla. 2012) *See also Lear Corp. v. Johnson Elec. Holdings Ltd.,* 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established."), citing *Nationwide Ins. v. Zavalis,* 52 F.3d 689, 693 (7th Cir. 1995); *Ace Am. Ins. Co. v. Huntsman Corp.,* 255 F.R.D. 179, 209 (S.D. Tex. 2008) ("Indemnity disputes ordinarily are not ripe until the underlying obligation is

determined). Here, as in *Axis*, given that the Other Insurers have agreed that American Casualty is an excess insurer, its indemnity coverage is subject to a multiple contingency. As such, it is not ripe for decision at this stage.

## II.     IF IT WERE AT ISSUE, AMERICAN CASUALTY WOULD HAVE A DUTY TO DEFEND.

To the extent that the Court wants to consider and issue an advisory opinion on the question of whether American Casualty the Policies hypothetically would obligate American Casualty to defend the Insureds based on the underlying allegations were American Casualty a primary insurer, the answer would be yes. The Underlying Action raises claims that the Florida Supreme Court confirmed fall within the insuring agreements and those claims potentially include claims that do not fall within the "Violation of Statutes" exclusion, the only material defense to coverage raised by American Casualty.

### A.     Relevant Insurance Coverage Standards.

"[A]n insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 442-43 (Fla. 2005). "The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless." *Id.* at 443. "Any doubts regarding the duty to defend must be resolved in favor of the insured." *Id.* "Where some allegations set out in the complaint require the insurer to defend the insured and some allegations do not, the insurer must provide a defense on the entire suit." *Irvine v. Prudential Property and Cas. Ins. Co.*, 630 So.2d 579, 580 (Fla. App. 1993), *citing Tire Kingdom, Inc. v. First Southern Ins. Co.*, 573 So.2d 885, 887 (Fla. App. 1990). Thus, an insurer must defend an entire suit as long as one claim is covered by the policy. *See Mactown, Inc. v. Continental Ins. Co.*, 716 So.2d 289, 292 (Fla. App. 1998).

"[I]nsurance contracts are construed according to their plain meaning, with any ambiguities

construed against the insurer and in favor of coverage. If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." *Penzer v. Transportation Ins. Co.*, 29 So.3d 1000, 1005 (Fla. 2010), *quoting U.S. Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So.2d 871, 877 (Fla. 2007) and *Garcia v. Fed. Ins. Co.,* 969 So.2d 288, 291 (Fla. 2007). "When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Castillo v. State Farm Florida Ins. Co.*, 971 So.2d 820, 824 (Fla. App. 2007). "Insuring or coverage clauses are understood to achieve the maximum coverage coherent with the plain meaning of the words used." *Lenhart v. Federated Nat. Ins. Co.*, 950 So.2d 454, 457 (Fla. App. 2007) (citing cases). This means that language granting coverage is construed broadly and exclusions are construed narrowly. *Id.*

**B.     The Policy Terms Implicate the Duty to Defend.**

Coverage is triggered for both "property damage," and "personal and advertising injury" coverage under the Policy based on the allegations of the Underlying Action. As such, American Casualty is not entitled to declaratory relief extinguishing its coverage obligations.

**1.     Coverage Exists Under Coverage B – Personal And Advertising Injury Liability.**

The Policy provides "personal and advertising injury" coverage against claims based on "publication, in any manner, of material that violates a person's right of privacy." The Florida Supreme Court has found that an identically worded policy covered the claims at issue here. *See Penzer*, 29 So.3d 1000 (holding that there is coverage because right to privacy includes right to seclusion). The Florida Supreme Court concluded, "we hold that an advertising injury provision in a commercial liability policy that provides coverage for an 'oral or written publication of material that violates a person's right of privacy' provides coverage for blast-faxing in violation of the TCPA." *Id.* at 1008. *Penzer* is controlling, and requires a finding that the claims here are covered by the Policies'

"personal and advertising injury" insuring clauses.

## 2. Coverage Also Exists Under Coverage A – Property Damage Liability.

While *Penzer* only addressed "advertising injury" coverage, numerous decisions have found "property damage" coverage for claims predicated on junk faxing, under policies worded identically to American Casualty's Policy here. *See Bridgeview Health Care Center Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 13 (Ill. May 22, 2014); *Columbia Cas. Co. v. HIAR Holdings, L.L.C.*, 411 S.W.3d 258, 268-69 (Mo. 2013); *Park Univ. Enters., Inc. v. American Cas. Co. of Reading, PA*, 442 F.3d 1239, 1245 (10th Cir. 2006); *Universal Underwriters Ins. Co. v. Lou Fusz Automotive, Inc.*, 401 F.3d 876, 882-83 (8th Cir. 2005); *Erie Ins. Exchange v. Lake City Industrial Prods., Inc.*, 2012 WL 1758706 (Mich. App. May 17, 2012), *lv. to appeal denied* 825 N.W.2d 579 (Mich. 2013); *Ins. Corp. of Hanover v. Shelborne Assocs.*, 905 N.E.2d 976, 983 (Ill. App. 2009); *Penn National Ins. Co. v. Group C Comms., Inc.*, Case No. L-134-09, 2011 WL 3241491 (N.J. Super. A.D. Aug. 1, 2011); *Harford Mut. Ins. Cos. v. Aegan, Inc.*, Case No. 1:09CV461, 2011 WL 2295036 (M.D. N.C. June 8, 2011); *Prime TV, LLC v. Travelers Ins. Co.*, 223 F.Supp.2d 744 (M.D. N.C. 2002); *Telecommunications Network Design, Inc. v. Brethren Mut. Ins. Co.*, 83 Pa. D & C 4th 265, 2007 WL 3760745 (Pa. Com. Pl. May 10, 2007), *affirmed on other grounds*, 5 A.3d 331 (Pa. Super. 2010).

The TCPA was enacted in part because:

> [W]hen an advertiser sends marketing material to a potential customer through regular mail, the recipient pays nothing to receive the letter. In the case of fax advertisements, however, the recipient assumes both the cost associated with the use of the facsimile machine and, the cost of the expensive paper used to print out facsimile messages. It is important to note that these costs are borne by the recipient of the fax advertisement regardless of their interest in the product or service being advertised.

> In addition to the costs associated with fax advertisements, when a facsimile machine is receiving a fax, it may require several minutes or more to process and print the advertisement. During that time, the fax machine is unable to process actual business communications.

H.R. Rep. No. 102-317 (1991), p. 25. In other words, the TCPA was enacted to curb damage to fax

recipients' property. The conversion claim likewise seeks redress for damage to plaintiff and class members' property.

As discussed in the above-referenced cases, the allegation that the insured "knew or should have known" the fax it was sending was unsolicited and nonconsensual means that the claims were "occurrences" under the insurers' policies' definition of "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See Shelborne*, 905 N.E.2d at 983. As pled in the underlying complaint here, a junk fax can constitute an "accident" and thus constitutes an "occurrence."

These cases also stand for the proposition that there is an "occurrence" not barred by the policy's "intentional acts" exclusion when damages result from actions taken intentionally by an insured but without an intent to cause harm; the fact that the defendant may have believed the faxes were sent lawfully (*i.e.* with consent), places the claims within coverage. The Florida Supreme Court has held that "where the term 'accident' in a liability policy is not defined, the term, being susceptible to varying interpretations, encompasses not only 'accidental events,' but also injuries or damage neither expected nor intended from the standpoint of the insured." *State Farm Fire & Cas. Co. v. CTC Devel. Corp.*, 720 So.2d 1072, 1076 (Fla. 1998).

The issue that must be determined is thus whether the *injury* was expected or intended, not whether the acts were performed intentionally. *Id. See Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So.2d 1241, 1248 (Fla. 2008); *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 883-84 (Fla. 2007); *State Farm Fire & Cas. Co. v. CTC Development Corp.*, 720 So.2d 1072, 1076 (Fla. 1998); *FCCI Ins. Co. v. Horne*, 890 So.2d 1141, 1144 (Fla. App. 2004) (even conduct "substantially certain to result in serious injury or death" was accident under policy "*so long as the insured did not intend to cause any harm*") (emphasis in original). Thus, as long as a defendant did not intend to cause any harm by its faxing activities, the claims are covered under the Policies' "property damage" coverage. That is what was

alleged.

### 3. The Statutory Violation Exclusion Does Not Absolve American Casualty of its Coverage Obligations.

It is well-established that an insurer bears the burden to prove the applicability of an exclusion. *See Castillo v. State Farm Florida Ins. Co.*, 971 So.2d 820, 824 (Fla. App. 2007). A policy provision that purports to exclude or limit coverage must be read narrowly and will be applied only where its terms are clear, definite, and specific. *See Lenhart v. Federated Nat. Ins. Co.*, 950 So.2d 454, 457 (Fla. App. 2007). Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer. *Id.*

American Casualty contends that an exclusion titled "Violation of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information" (the "Violation of Statutes Exclusion") applies and obviates coverage entirely, including the duty to defend. Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not potentially fall within the policy's coverage. In determining whether there is a duty to defend, moreover, the allegations in the underlying complaint must be construed liberally, and any doubts must be resolved in favor of coverage. An insurer may refuse to defend only if the complaint allegations preclude any possibility of coverage.

American Casualty contends that the Violation of Statutes Exclusion obviates coverage entirely, including the duty to defend. It is incorrect. The exclusion applies to damages that arise out of the violation of the TCPA. The only damages that actually arise out of the TCPA are the damages provided for by that statute. Count II of the Complaint in the Underlying Action seeks independent damages from those sought in Count I and would be cognizable even if the TCPA did not exist. The conversion claims is independently sufficient in the absence of the TCPA and seeks independent damages.

Therefore, that claim does not "arise out of" any TCPA violation. Though a TCPA claim is

also alleged in the Underlying Action, and though that claim shares some of the factual predicates as the conversion claim, the conversion claim has different elements and therefore arises out of actions and omissions separate from the TCPA claim. Because of this, there was the potential that the Insureds' conduct would ultimately prove not to be violative of the TCPA yet actionable for conversion (or vice versa).

A claim under the TCPA is premised on three things: (1) sending a facsimile (2) that is an advertisement (3) without prior express consent by the recipient. *See* 47 U.S.C. § 227. As long as those things are alleged and proven, a plaintiff is entitled to the TCPA's statutory liquidated damages. No actual damages are needed. To prevail on a TCPA claim, therefore, one need not prove that he or she received the fax, but rather only that it was sent to him or her. *See* 47 U.S.C. § 227(b)(1)(C); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 263 P.3d 767, 779 (Kan. 2011) ("We conclude that the TCPA does not require that Taranto successfully completed a fax transmission but only that Taranto attempted to complete a fax transmission. It will be unnecessary for plaintiffs to prove that they actually received the transmissions…"); *A Fast Sign Co., Inc. v. American Home Servs., Inc.*, 734 S.E.2d 31, 32-33 (Ga. 2012).

The conversion claim, on the other hand, is premised on the actual damage to Plaintiff caused by its receipt of the fax. It sought reimbursement for the actual use of the class members' fax machines. To plead and prevail on the conversion count, it was necessary for Plaintiff to have received the fax and to have suffered some loss as a result of it. *See, e.g., Mayo v. Allen*, 973 So.2d 1257, 1258-59 (Fla. App. 2008) ("It is well settled that a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time."). Significantly, a conversion claim based on an unwanted fax does not depend on whether the message was an advertisement, or whether there was an established business relationship between the sender and recipient, but does require that the defendant deprived a plaintiff of its property.

The conversion claim thus is based on one fact common to the TCPA claim—that the Insureds sent faxes to Plaintiff and the other class members—but beyond that is premised on different facts. Unsurprisingly, therefore, nowhere in the conversion count of the Complaint in the Underlying Action does the Complaint mention the TCPA. It does not rely on the TCPA as the source of Plaintiff's right under its conversion claim, and it seeks separate damages. *A fortiori*, the conversion claim does not "arise out of" any TCPA violation. The exclusion, on the other hand, applies to damages that arise out of the violation of the TCPA.

In that regard, the conversion claim is independently sufficient in the absence of the TCPA and seeks independent damages. It does not "arise out of" any TCPA violation. The Insureds can be found to have violated the TCPA but not liable for conversion—or vice versa. There was certainly the potential that some of the faxes sent were not violative of the TCPA. Therefore, because the duty to defend exists if *any* claim offers *any potential* for coverage, American Casualty had a duty to defend the action based on the conversion claim.

Policy exclusions are construed narrowly and an exclusion will not be applied unless its terms are clear, definite, and specific. *See Castillo*, 971 So.2d at 824; *Bell Care Nurses Registry, Inc. v. Continental Cas. Co.*, 25 So.3d 13, 17 (Fla. App. 2009) ("An insurer is required to make clear precisely what is excluded from coverage."); *Liebel v. Nationwide Ins. Co. of Florida*, 22 So.3d 111, 115 (Fla. App. 2009) ("ambiguous exclusionary clauses are construed even more strictly against the insurer than coverage clauses. Thus, the insurer is held responsible for clearly setting forth what damages are excluded from coverage under the terms of the policy."); *National Indem. Co. of South v. Landscape Management Co., Inc.*, 963 So.2d 361, 364 (Fla. App. 2007) ("exclusionary clauses are construed even more strictly against the insurer than coverage clauses"). Because the Violation of Statutes Exclusion Endorsement does not clearly and specifically exclude the conversion claim here, it should not be applied to bar coverage for it.

Further, a policy term that appears unambiguous at first blush might not be such when viewed in the context of the particular factual setting in which the policy was issued. For example, in interpreting policy language, while the title of a coverage form or endorsement "may not be an operative term of the policy, the title clearly indicates the type of [coverage or exclusion].... And, as seen, the type of [coverage or exclusion] is germane to determining the meaning of policy language." *See Westport Ins. Corp. v. Jackson Nat. Life Ins. Co.*, 387 Ill. App. 3d 408, 412 (Ill. App. 2008).

Here, the exclusion in question is titled in reference to "Violation of Statutes." This title clearly indicates that the exclusion American Casualty was attempting to insert was an exclusion of *statutory* claims. *See id.* Thus, the language "arising out of" the TCPA can and should reasonably read to apply to liability claims alleged under that statute. This reading is reinforced by the fact that the exclusion lists a number of specific statutes and then the catchall is limited to "similar statutes." American Casualty's choice of the limiting language "statute, ordinance or regulation," as opposed to, say, "cause of action" or "claim," is consistent with the interpretation of the exclusion as confined to statutory claims of a specific type. Here, only the TCPA claim falls within that category. Conversion, of course, is not a statutory claim at all.

Comparing the Violation of Statutes Exclusion relied upon by American Casualty here with similar exclusions used by other insurers provides further support for the interpretation that the exclusion is narrowly tailored to exclude TCPA statutory claims themselves and does not exclude the remaining claim at issue. For example, St. Paul Fire & Marine Insurance Company has used the following exclusionary endorsement language:

**UNSOLICITED COMMUNICATION ENDORSEMENT**

The following is added to the Exclusions – What This Agreement Won't Cover section. This change excludes coverage.

**Unsolicited communication.** We won't cover injury or damage or medical expenses that result from any actual or alleged violation of any law or regulation that restricts or prohibits the transmitting of unsolicited communication.

Nor will we cover any other injury or damage alleged in a claim or suit that also alleges any such violation.

*Unsolicited communication* means any communication, in any form, that:

- Is received by any person or organization; and

- Such person or organization didn't ask to receive.

*See* St. Paul Endorsement (Exhibit A). There are two key differences between this exclusion and the one American Casualty claims to have included in the Policy here. First, its title announces to the insured that it is excluding claims based on "unsolicited communications" as opposed to "statutes." This terminology is consistently used throughout. Second, and most importantly, the St. Paul exclusion specifically excludes "other injury or damage alleged in a claim or suit that also alleges" a TCPA violation. This acknowledges that the "injury or damage or medical expenses that result from any actual or alleged violation" language in the first paragraph of the St. Paul exclusion—language that is already broader than the "arising out of" language in the American Casualty form of the exclusion—is insufficient on its own to exclude damages from other independent causes of action based in part on conduct that would form a basis for a statutory claim.

Another insurer, Travelers Indemnity Company, has filed the following exclusion:

**EXCLUSION—UNSOLICITED COMMUNICATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or "website injury" arising out of unsolicited communications by or on behalf of any insured. Unsolicited communications means any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. Unsolicited communications also include but are not limited to communications which are made or allegedly made in violation of the Telephone Consumer Protection Act and any amendments, and/or local or state statutes that bar, prohibit or penalize such communications.

*See* Travelers Endorsement (Exhibit B). This exclusion likewise excludes all claims based on

"unsolicited communications," regardless of whether they are based on a statutory violation.

Despite the fact that this language was on file with the various state departments of insurance and was of public record and available to American Casualty well before the Policy was issued, *see* Ex. A at 8/04 creation date (found in footer); Ex. B at 2004 copyright, American Casualty elected to try to use the more narrow language it did. This shows a conscious decision not to exclude other claims in a lawsuit alleging a violation of the TCPA—a decision that a consumer of insurance such as the Insureds may have noted.

"In the position of scrivener and with a highly sophisticated knowledge of risk and benefit, [American Casualty] crafted a policy whereby [American Casualty] chose to extend the policy's coverage…." *Ferrell v. West Bend Mut. Ins. Co.*, 393 F. 3d 786, 790 (8th Cir. 2005). "Presumably, [American Casualty] offers this type of broad coverage to induce customers to buy its policies and to pay higher premiums for them. The benefits thereby accruing to [American Casualty] are neither fortuitous nor incidental." *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 287 (4th Cir. 1987).

Numerous courts—including the only Florida court to have addressed the question—have considered this precise coverage question and have held that the "Violation of Statutes" exclusion does not relieve insurers of their duty to defend the underlying claims. *See Allstate Ins. Co. v. Florida Freeze of Southwest Florida, Inc.*, Case No. 11-CA-1881 (Cir. Ct. of Lee Cty., Fla. Feb. 10, 2014) (Exhibit C); *Reliable Money Order, Inc. v. CRK, LLC*, Case No. 10-CV-2229 (Cir. Ct. of Milwaukee Cty., June 5, 2013) (Exhibit D); *New United, Inc. v. Brown Commercial Group and Nationwide Ins. Co.*, 09 CH 15984 (Cir. Ct. of Cook Cty., Sept. 6, 2013) (Exhibit E); *Green v. Markel Ins. Co.*, Case No. 09 MR 1373 (Cir. Ct. for the 19th Jud. Cir., Lake Cty., Sept. 28, 2012) (Exhibit F); *Illinois Cas. Co. v. Bia, Inc.*, Case No. 09 MR 843 (Cir. Ct. for the 19th Jud. Cir., Lake Cty., Jan. 24, 2012) (Exhibit G); *Acuity Ins. Co. v. Blackhawk Paving, Inc.*, Case No. 08 CH 35830 (Cir. Ct. of Cook Cty., Dec. 7, 2011) (Exhibit H); *Illinois Cas. Co. v. West Dundee China Palace Rest., Inc.*, Case No. 09 MR 844 (Cir. Ct. for the 19th

Jud. Cir., Lake Cty., Oct. 11, 2011) (Exhibit I); *Columbia Mut. Ins. Co. v. Cutter Indus., Inc.*, Case No. 08 MR 899 (Cir. Ct. for the 19th Jud. Cir., Lake Cty., July 26, 2011) (Exhibit J); *Nationwide Mut. Ins. Co. v. Harris Medical Associates, LLC*, 2013 WL 5341498 (E.D. Mo. Sept. 23, 2013) (Exhibit K).

These represent the overwhelming majority of courts to actually consider the question of whether the underlying conversion claims alleged fall within the exclusion. These courts note that the exclusion in question applies only to TCPA claims and the duty to defend exists because the underlying cases at issue also alleged conversion claims and any covered claim requires an insurer to defend. For the reasons stated by these numerous courts to have considered this coverage question under the same policy language and allegations, American Casualty has a duty to defend here as well. These decisions find support in the bedrock canon of insurance policy construction law: that grants of coverage are construed broadly and exclusions construed narrowly. This Court is respectfully encouraged to hold likewise.

American Casualty relies on several cases which it asserts support its position, but on closer review, few do. *See* American Casualty Brief at 17-22, citing cases. For example, *Windmill Nursing Pavilion, Ltd. v. Cincinnati Ins. Co.*, 2 N.E.3d 582 (Ill. App. 2013), is entirely inapposite; that decision addressed two issues: (1) whether proper reduction in coverage notice was provided an insured and (2) what the applicable policy limits were. It was the product of a "high-low" settlement reserving those—and only those—issues. As such, it does not address the applicability or scope of the "Violation of Statutes Exclusion." Most of the remaining cases held that certain exclusions precluded coverage for TCPA statutory claims. None of those cases addresses the real issue here – specifically whether those exclusions clearly and ambiguously preclude coverage for conversion claims. They do not.

In particular, while American Casualty aggressively asserts that *Interline Brands, Inc. v. Chartis Spec. Ins. Co.*, 749 F.3d 962 (11th Cir. 2013), helps it, it does not and cannot explain what relevance

that opinion has to American Casualty's duty to defend *the underlying Count II claims* as opposed to the underlying Count I claims. That case did not involve underlying conversion claims potentially based on conduct that does not violate the TCPA. Rather, the sole issue in that case was whether the exclusion was void *ab initio* such that it did not exclude TCPA claims themselves.

American Casualty further relies on a 2014 Illinois appellate decision that is still subject to potential review by the Illinois Supreme Court and, as such, has not been released for publication. *See G.M. Sign, Inc. v. State Farm Fire and Cas. Co.*, 2014 IL App (2d) 130593 ("*G.M. Sign II*").[4] As a review of Westlaw quickly reveals, this opinion has not been released and "is subject to revision or withdrawal." *Id.* Nor may *G.M. Sign II* ultimately be released, as explained more fully below, as it is in direct conflict with a prior holding of the same court, involving the same parties, pleadings, and policies, as well as basic principles of insurance coverage law.

The May 2014 decision was not the first occasion in which Illinois' Second District appellate court considered whether the allegations made in the complaint there (and here) potentially fell within the policies coverage, obligating State Farm to defend. Rather, in 2013, a different panel of the same court held that "G.M. Sign filed an amended complaint, **which potentially brought the claims within the insurance policy**." *See G.M. Sign, Inc. v. Schane,* 2013 IL App (2d) 120434, ¶ 41 ("*G.M. Sign I*") (emphasis added).[5] *See also G.M. Sign II*, 2014 IL App (2d) 130593 at ¶ 16 ("[r]efusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not potentially fall within the policy's coverage"), *citing Outboard Marine Corp. v. Liberty Mut.*

---

[4] Another case cited by American Casualty is an unreported Michigan appellate decision purporting to apply Illinois law which suffers from precisely the same analytical flaws as does *G.M. Sign II. See G.M. Sign, Inc. v. Auto-Owners Ins. Co.*, 2012 WL 4840592, at *4 (Mich. App. Oct. 11, 2012).

[5] Although on rehearing the later panel, in a clear attempt at revisionist history, suggested that *G.M. Sign I* merely addressed the question as a hypothetical, nothing in the earlier decision supports that conclusion. To the contrary, the court in *G.M. Sign I* specifically based its conclusion that the requested intervention by State Farm was timely on the fact that the Amended Complaint potentially brought the claims within the insurance policy. *G.M. Sign I*, 2013 IL App (2d) 120434, at ¶ 41. This inherent, and utterly irreconcilable, conflict will be presented to the Illinois Supreme Court in due course in a petition for leave to appeal.

*Ins. Co.*, 154 Ill.2d 90, 108 (1992).

Thus, "[a]n insurer has the duty to defend unless the allegations of the underlying complaint show that the plaintiff in the underlying suit will not be able to prove the insured liable, **under any theory supported by the complaint**, without also proving facts that show that the loss falls outside of the insurance policy's coverage." *G.M. Sign II*, ¶ 18, *citing American Economy Ins. Co. v. DePaul University*, 383 Ill.App.3d 172, 177-78 (1st Dist. 2008) (emphasis added).

The faxes at issue in Counts II and III in that case, as in Count II in the underlying pleading at issue here, are *all* faxes sent within the applicable limitations period. There is nothing in the underlying complaint suggesting either that the insured sent faxes only on one occasion or that the case was limited to a single fax transmission. While the sending of any unsolicited fax gives rise to a conversion claim or an ICFA claim (as pled), not every unsolicited fax transmission violates the TCPA. However, the TCPA is limited, among other ways, to faxes that are: (1) advertisements and (2) not sent to persons with an established business relationship with defendant. *See* 47 U.S.C. § 227. It **is** possible for a class member to have been injured by conduct that does *not* violate the TCPA (or any similar statute).

For example, the conversion class potentially included the recipients of faxed Holiday Family Newsletters detailing the exploits of defendants and their family vacations and turnip gardens over the preceding year. And while being subjected to stilted prose about the county fair in Des Moines accompanied by photographs of the world's largest ear of corn might be considered by some to be "cruel and unusual punishment," such family newsletters would hardly constitute "material advertising the commercial availability or quality of any property, goods, or services" offered by defendants so as to violate the TCPA. 47 U.S.C. § 227(a)(5).

The applicability of the exclusion turns on whether the conduct in question violates the TCPA, not whether it shares certain characteristics with certain TCPA violations (*i.e.*, involves

unsolicited faxing). As noted above, American Casualty could have elected to use a broad "unsolicited communications" exclusion not dependent on whether conduct violates the TCPA, as other insurers have done. It did not. As such, the potential claims over the family newsletters or numerous other possible non-advertising faxes require a defense.

Likewise, the TCPA is restricted to faxes sent to persons other than those with an "established business relationship" 47 U.S.C. § 227(b)(1)(c). But the conversion claim at bar was not so limited. In other words, even if the complaints *were* confined to the attached faxes, there was the potential that some of the persons to which they were sent had established business relationships with defendants. Those persons would still have conversion claims, and the conversion claims would not arise out of an act or omission that violates the TCPA. Thus, there can be no question that unsolicited faxes sent by defendants that: (1) are not advertisements or (2) were sent to persons with whom defendants had business relationships would not fall within the terms of the exclusion, because any injury from such faxes would not arise out of conduct that violated the TCPA.

*G.M. Sign II* appears to dismiss such potential faxes, however, because the underlying complaint does not specifically allege their existence. 2014 IL App (2d) 130593 at ¶ 21 ("Neither of the alternative counts pleaded any facts relating to advertisements or established business relationships."). Which is true, as far as it goes. But that necessarily means that neither count contained allegations limiting the case to advertisements, recipients without established business relationships, or conduct violating the TCPA in general. Instead, the counts raised broad claims on behalf of classes of fax recipients. From the complaints, the claims could have been related only to faxes that violated the TCPA, only faxes that did not violate the TCPA, or a mix of the two (since questions of whether something is an "advertisement" and whether a recipient has an "established business relationship" with the sender for TCPA purposes are irrelevant to conversion).

In essence, *G.M. Sign II* reverses the duty to defend standard: "State Farm need not defend

unless the complaint specifically alleges covered claims" is diametrically the opposite of resolving any doubt regarding the duty to defend in favor of the insured. The fact that the complaints do not say one way or the other whether all of the faxes were advertisements or whether all of the faxes were sent to people without established business relationships with defendants establishes the insurers' duty to defend, not the lack thereof. The conversion claims here are not limited to faxes that violate the TCPA. Therefore, the potential exists that the suit contains covered claims.

Significantly, as the Florida Supreme Court noted in the *Penzer* concurrence with respect to the contract interpretation question it was considering, the numerous cases opposed to American Casualty's construction of the Violation of Statutes Exclusion illustrate that the exclusion is "capable of being understood" as not applying to all underlying claims. *See Penzer*, 29 So.3d 1000, 1009 (Fla. 2010) (*in concurrence*), *quoting Terra Nova Ins. Co. v. Fray-Witzer,* 869 N.E.2d 565, 573 (Mass. 2007) ("Although we are aware that an insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants, in evaluating the ambiguity of the phrase, we cannot ignore the body of national case law addressing the same or similar policy language and falling on both sides of this interpretive ledger."). *See also Cohen v. Erie Indem. Co.*, 288 Pa. Super. 445, 452, 432 A.2d 596, 599 (1981) ("The very existence of two contrary schools of thought evidenced by the conflicting holdings in cases cited by both the Appellee and the Appellant is convincing in the conclusion that the clause in issue is ambiguous."). Where there is a reasonable interpretation favoring coverage, the Court is required to find that coverage exists.

<u>**CONCLUSION**</u>

American Casualty does not present a presently justiciable controversy and its motion asks this Court to issue an advisory opinion. It should not do so. To the extent it does, however, the terms of the Policies obligate a defense under the underlying allegations.

Respectfully submitted,

FLORIDA FIRST FINANCIAL GROUP, INC.     IKE OKEKE and YVONNE OKEKE

s/Ryan M. Kelly _____     s/Jonathan N. Zaifert _____
One of its Attorneys                    Their Attorney

Ryan M. Kelly, Florida Bar No. 90110        Jonathan N. Zaifert, Florida Bar No. 14100
David M. Oppenheim (admitted pro hac vice)  Rywant, Alvarez, Jones, Russo & Guyton, P.A.
Anderson + Wanca                            109 N. Brush Street, Suite 500
3701 Algonquin Road, Suite 760              Tampa, FL 33602
Rolling Meadows, IL 60008                   Telephone: 813-229-7007
Telephone: 847-358-1500                     Facsimile: 813-223-6544
Facsimile: 847-368-1501                     jzaifert@rywantalvarez.com
rkelly@andersonwanca.com
doppenheim@andersonwanca.com

Michael C. Addison, Florida Bar No. 0145579     SUPERIOR PHARMACY, LLC and HILDA
Addison & Howard, P.A.                          ANADIUME
400 N. Tampa Street, Suite 1100
Tampa, FL 33602                                 s/Jean-Jacques A. Darius _____
Telephone: 813-223-2000                         Their Attorney
Facsimile: 813-228-6000
m@mcalaw.net                                    Jean-Jacques A. Darius, Florida Bar No. 0997780
                                                J. Jacques A. Darius, P.A.
Phillip A. Bock, Florida Bar No. 93895          14502 N. Dale Mabry Hwy., Suite 200
Bock & Hatch, LLC                               Tampa, FL 33618
134 N. LaSalle Street, Suite 1000               Telephone: 813-930-2222
Chicago, IL 60602                               Facsimile: 813-930-2121
Telephone: 312-658-5500                         jdarius@earthlink.net
Facsimile: 312-658-5555
phil@bockhatchllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/Ryan M. Kelly