## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA,

      Plaintiff,

v.                               **Case No: 8:13-cv-622-T-27TBM**

SUPERIOR PHARMACY, LLC, HILDA
ANADIUME, IKE OKEKE, YVONNE
OKEKE, and FLORIDA FIRST
FINANCIAL GROUP, INC.,

      Defendants.

_____/

## ORDER

**BEFORE THE COURT** is Plaintiff/Counter-Defendant American Casualty Company of Reading, Pennsylvania's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 90), Defendants' joint response (Dkt. 93), Plaintiff's Reply (Dkt. 95), and Defendants' joint supplemental response (Dkt. 99).[1] Upon consideration, the Motion is GRANTED.

I.    BACKGROUND

American Casualty Company of Reading, Pennsylvania ("American Casualty") brings this declaratory judgment action seeking a determination of its duty to defend and indemnify Superior Pharmacy, LLC, Hilda Anadiume, Ike Okeke, and Yvonne Okeke ("Defendants") in an underlying putative class action brought against them by Florida First Financial Group, Inc. ("Florida First"). Defendants filed counterclaims against American Casualty seeking similar declarations (Dkts. 28, 62, 64).

---

[1] Old Dominion Insurance Company, who was dismissed as a defendant on May 13, 2014 (Dkts. 83, 84), filed a notice of non-objection to the Motion (Dkt. 91).

## A.    The Underlying Lawsuit

In January, 2011, Florida First filed a Class Action Complaint against Defendants alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") (Count I) and conversion (Count II) (Dkt. 1-2).  In its complaint, Florida First alleged that "[t]his case challenges Defendants' practice of faxing unsolicited advertisements in violation of the federal [TCPA] and for sending unsolicited faxes in violation of Florida Common Law" (*id.*, ¶ 1).  Florida First alleged that "[o]n or about January 3, 2007, January 10, 2007, January 17, 2007 and January 24, 2007, Defendants transmitted by telephone facsimile machine the same facsimile four (4) times to [Florida First]" (*id.*, ¶ 11).  A copy of the fax is attached to the complaint as Exhibit A (*id.* at CM/ECF p. 16). Defendants allegedly distributed the unsolicited fax to Florida First and the other members of the purported class as "part of Defendants' work or operations to market Defendants' goods or services" (*id.*, ¶¶ 12, 13, 14, 16).  These allegations are incorporated into Counts I and II of the underlying complaint (*id.*, ¶¶ 27, 37).

In the underlying complaint, Florida First alleged that it brings TCPA and conversion claims on behalf of

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) with respect to whom Defendants did not have prior express permission or invitation for the sending of such faxes, and (4) with whom Defendants did not have an established business relationship (the "Class"), and (5) which did not display a proper opt out notice.

(Dkt. 1-2, ¶19).  This paragraph is incorporated into Count I, the TCPA claim, but not Count II, the conversion claim (*see id.*, ¶¶ 27, 37).  With respect to the conversion claim, Florida First alleged that it is brought "[i]n accordance with Florida Statute § 365.1657" on behalf of

> All persons who on or after a date of four years prior to the filing of this action, were

2

Case 8:13-cv-00622-JDW-TBM  Document 100  Filed 01/08/15  Page 3 of 13 PageID 2787

sent telephone facsimile messages by or on behalf of Defendants.

(*id.*, ¶ 38).

On February 21, 2013, American Casualty agreed to defend the Defendants in the underlying action pursuant to a reservation of rights (Dkt. 1-4). Old Dominion Insurance Company and Maryland Casualty Company also agreed to defend the Defendants subject to a reservation of rights (Dkts. 90-4, 54-1). Thereafter, Maryland Casualty and Old Dominion agreed to jointly defend the Defendants as primary insurers and American Casualty withdrew its defense effective June 1, 2014, subject to a reservation of rights (Dkt. 90-7).[2]

### B.    The Policies

American Casualty issued Policy No. 2090658080 to Superior Pharmacy for consecutive one-year policy periods commencing June 18, 2006 through June 18, 2011 (*see* Dkts. 1-5, 1-6, 1-7, 1-8, 1-9).[3] The Policies contain a "Violation of Statutes" exclusion:

> **EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION**
> * * *
> A.    The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:
>
> q.    This insurance does not apply to:
>
> **DISTRIBUTION OF MATERIAL IN VIOLATION OF**

---

[2] American Casualty also sued Maryland Casualty and Old Dominion as defendants in this action. However, when an issue of diversity jurisdiction arose (*see* Dkt. 75), they were dismissed without prejudice pursuant to a settlement (Dkts. 82, 83). Florida First also dismissed its cross-claims against Maryland Casualty and Old Dominion without prejudice (*id.*).

[3] The policies were issued to Superior Pharmacy for the following periods: June 18, 2006 to June 18, 2007 ("06-07Policy"); June 18, 2007 to June 18, 2008, ("07-08 Policy"); June 18, 2008 to June 18, 2009, ("08-09 Policy"); June 18, 2009 to June 18, 2010, ("09-10 Policy"); June 18, 2010 to June 18, 2011, ("10-11 Policy").

3

STATUTES

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    (1)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

    (2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

    (3)    Any statute, ordinance or regulation, other than the TCPA or CAN- SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

B.    The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

(15)    This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    a.    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

    b.    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

    c.    Any statute, ordinance or regulation, other than the TCPA or CAN- SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

(Dkts. 1-5 at 90; 1-6 at 94; 1-7 at 91; 1-8 at 91; 1-9 at 88; 1-11 at 2 (Form No. SB-147078-A (Ed. 01/06)).

4

## II.   STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III.   DISCUSSION

American Casualty seeks a determination that it has no duty to defend or indemnify Defendants for the claims asserted by Florida First. Specifically, in Count II of the Second Amended Complaint, American Casualty seeks summary judgment based on the Violation of Statutes Exclusion (*see* Dkt. 56, ¶¶ 40-44). As to Count I, American Casualty contends that summary judgment is appropriate because the Policies in effect from June 18, 2007 to June 18, 2011 are not implicated by the underlying lawsuit, since the claims are based on the January 2007 faxes only (Dkt. 90 at 13; Dkt. 56, ¶¶ 31-36).

Defendants first contend that American Casualty's request for a declaration that it has no duty to defend is moot, since it is no longer defending the underlying lawsuit. Second, Defendants contend that American Casualty's request for a declaration that it has no duty to indemnify is premature because there has been no judgment entered against them in underlying lawsuit. They also argue that the Violation of Statutes exclusion does not apply to Florida First's conversion claim.

American Casualty argues that its duty to defend is not moot for two reasons. First, it points out that Defendants filed counterclaims seeking a determination that it has a duty to defend in the underlying lawsuit. Second, American Casualty has incurred defense fees and costs on behalf of the Defendants from the time it received notice of the claim on or about January 16, 2013, through its

withdrawal in May 2014, and reserved its right to seek reimbursement of those defense fees and costs (*see* Dkt. 1-4 at 8; Dkt. 56 at 23).

Because American Casualty incurred fees and costs in defending the Defendants and reserved its right to seek reimbursement, the question of whether it has a duty to defend the Defendants cannot be considered moot. *See Certain Interested Underwriters at Lloyd's, London v. Halikoytakis*, 556 Fed. App'x 932, 933 (11th Cir. 2014) ("Under Florida law, a liability insurer that has reserved the right to seek reimbursement is entitled to recover fees and costs once it is determined that the insurer has no duty to defend.").

In Florida, an insured's duty to defend is determined solely by the allegations against the insured, not the actual facts or the insurer's version of the facts. *Irvine v. Prudential Prop. & Cas. Ins. Co.*, 630 So. 2d 579, 579–80 (Fla. 3d DCA 1993). It is only when the well pleaded facts of a complaint filed against an insured "fairly and potentially" brings the lawsuit within the policy coverage will a duty to defend arise. *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005). If any doubt exists regarding the insurer's duty to defend after an examination of the allegations of a complaint, "the issue is resolved in favor of the insured." *Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 Fed. App'x 861, 864-65 (11th Cir. 2014) (quoting *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580–81 (11th Cir.1995)). Where a policy coverage exclusion applies, however, "the insurer has no duty to defend." *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003). And the insurer bears the burden of demonstrating that a coverage exclusion applies. *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3d DCA 2007) (quotation omitted) ("When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within

6

the policy exclusion and are subject to no other reasonable interpretation.'").

On the other hand, an insurer's "duty to indemnify is determined by the underlying facts of the case." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n.3 (Fla. 1998). Where there is no duty to defend, however, there can be no corresponding duty to indemnify. *Composite Structures, Inc. v. Cont'l Ins. Co.*, 903 F. Supp. 2d 1284, 1290 (M.D. Fla. 2012) *aff'd*, 560 Fed. App'x 861 (11th Cir. 2014) (quoting *Federal Ins. Co. v. Applestein*, 377 So. 2d 229, 233 (Fla. 3d DCA 1979)).

## A.    Violation of Statutes Exclusion

American Casualty contends that the first subsection of the Violation of Statutes Exclusion in the policy bars coverage of Florida First's TCPA and conversion claims. Defendants do not dispute that this exclusion applies to the TCPA claim, Count I of the underlying complaint. *See Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962 (11th Cir. 2014) (violation of Statutes Exclusion barred defense and indemnity coverage for claimed TCPA violations). Nor do they dispute that the TCPA claim shares common factual components with the conversion claim, Count II of the underlying complaint.

Specifically, Defendants argue that a conversion claim does not "arise out of" any violation of the TCPA. And they assert that the elements of the two claims differ and that Florida First's conversion claim seeks damages independent of those sought in the TCPA claim. Defendants contend that a conversion claim based on the receipt of an unsolicited fax does not depend on whether the fax was an advertisement or whether an established business relationship existed between the sender and the recipient. According to Defendants, a conversion claim is distinguishable from a TCPA claim because the TCPA is restricted to faxes sent to persons other

7

than those with an established business relationship and only prohibits the sending of advertisements (Dkt. 93 at 19).

In its reply, American Casualty argues for the first time that the third subsection of the Violation of Statutes exclusion also bars coverage for the conversion claim because that claim is brought "[i]n accordance with Florida Statute 365.1657" (Dkt. 95 at 10). Defendants were directed to respond to this argument, which they did (Dkt. 99). They contend that Florida First's common law conversion claim does not involve a statute, ordinance, or regulation. Therefore, this claim does not arise out of "any statute, ordinance or regulation, other than the TCPA or CAN- SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information." They argue that Florida First's use of the phrase "in accordance with" means that Florida First's conversion claim is merely "in harmony with Section 365.1657" (*id.* at 3).

The Violation of Statutes Exclusion excludes coverage for bodily injury, property damage, or personal and advertising injury "arising directly or indirectly out of any action or omission that violates or is alleged to violate" (1) the TCPA, (2) the CAN-SPAM Act of 2003, or (3) "[a]ny statute, ordinance or regulation, other than the TCPA or CAN- SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information" (Dkts. 1-5 at 90; 1-6 at 94; 1-7 at 91; 1-8 at 91; 1-9 at 88; 1-11 at 2 (Form No. SB-147078-A (Ed. 01/06) (emphasis added)). Subsection One and Subsection Three will be addressed in turn.

### i.   *Subsection One*

In determining whether the conversion claim arises, directly or indirectly, out of an alleged violation of the TCPA or any other statute, ordinance or regulation that prohibits or limits the sending, transmitting, communicating or distribution of material or information, the Court turns to

Florida law on the construction of the relevant term. The Florida Supreme Court has reasoned that "[t]he term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539-40 (Fla. 2005) (quotation omitted). "[T]his requires more than a mere coincidence between the conduct . . . and the injury. It requires some causal connection, or relationship. But it does not require proximate cause." *Id.* (internal citations and quotations omitted). Moreover, "[t]he phrase 'arising out of' contemplates a more attenuated link than the phrase 'because of.'" *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 293 (Fla. 2007).

Applying these principles, First Florida's conversion claim is fairly considered to have arisen out of an alleged violation of the TCPA. Its complaint alleged that the conversion claim is brought "[i]n accordance with Florida Statute § 365.1657." (Dkt. 1-2, ¶ 38). That statute makes it "unlawful for any person to use a machine that electronically transmits facsimiles of documents through connection with a telephone network to transmit within this state *unsolicited advertising* material for the sale of any real property, goods, or services." Fla. Stat. § 365.1657 (emphasis added). Attached to the Class Action Complaint is a copy of the fax that Florida First complains about (Dkt. 1-2 at 16). As noted, the underlying complaint alleges that this fax was "[p]art of Defendants' work or operations to market Defendants' goods or services" (Dkt. 1-2, ¶ 13).

It is readily apparent from an examination of Exhibit A that the faxes that are the subject of the conversion claim are advertising faxes (*see id.*, ¶ 42) ("Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes."). And Florida First alleged that the faxes were unauthorized and unsolicited (*id.*, ¶¶ 14-16, 40-42, 46-52). It follows

9

that the underlying complaint is reasonably read to complain about faxes that were unsolicited advertisements. As such, the conduct underlying the conversion claim arises directly or indirectly from an alleged violation of the TCPA, in that the faxes were "caused by," "originat[ed] from," had their origin in, grew out of, flowed from, were "incident to" or had a connection with conduct underlying the TCPA claim, that is, the sending of unsolicited advertisement faxes. *Cf. James River Ins. Co. v. Med Waste Mgmt., LLC*, No. 1:13-CV-23608-KMM, 2014 WL 4749551, at *1, 7 (S.D. Fla. Sept. 22, 2014) (finding that the conversion claim arose out of TCPA-violating fax advertisements because the TCPA and conversion claims were both premised on the transmission of unsolicited faxes).

Defendants argue that the conversion claim potentially includes faxes that would not amount to unsolicited advertisement faxes, such as Holiday Family Newsletters (Dkt. 93 at 18). Faxes of that nature are not alleged to have been transmitted, however. The only reasonable inference that can be drawn from the allegations in that Defendants sent faxes that were similar to Exhibit A. The underlying complaint alleges that the Defendants "distributed to Plaintiff and other members of the Class" Exhibit A, which advertises the sale of goods or services (*see* Dkt. 1-2 , ¶ 12). *See* 47 U.S.C. § 227(a)(5) (An "unsolicited advertisement" means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."). Indeed, Exhibit A forms the basis for Florida First's TCPA claim.

Defendants also argue the possibility that some members of the conversion class could have had established business relationships with the Defendants and therefore could not have TCPA claims. This argument is likewise unpersuasive because the existence of an established business relationship supports only an affirmative defense to a TCPA claim which, together with two

10

additional elements, must be proven by Defendants.

The TCPA is not violated if the sender can show (1) the unsolicited advertisement was sent to a recipient with whom the sender has an established business relationship; (2) the recipient voluntarily communicated its fax number within the context of the established business relationship or the recipient voluntarily made its fax number available for public distribution; and (3) the fax included an opt-out notice as required by the statute and applicable FCC regulations. *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4). One court has characterized this as a "safe harbor provision." *See Neurocare Inst. of Cent. Florida, P.A. v. Healthtap, Inc.*, No. 6:13-CV-1228-GAP-GJK, 2014 WL 1236062, *2 (M.D. Fla. Mar. 25, 2014). Courts have also treated it as a defense, placing the burden on the sender to establish the three requirements. *See, e.g., MDC Acquisition Co. v. Traveler's Prop. Cas. Co. of Am.*, 545 Fed. App'x 398, 401 (6th Cir. 2013) (characterizing an established business relationship as an affirmative defense); *Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, 292 F.R.D. 433, 453 (E.D. Mich. 2013); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-CV-253, 2012 WL 4074620, *9 (W.D. Mich. June 21, 2012) (quoting *In re: Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3812 (April 6, 2006)). It follows, therefore, that conduct can be violative of the TCPA, notwithstanding the existence of an established business relationship between the sender and recipient.

Regardless, the existence of an established business relationship between sender and recipient does not preclude a finding that First Florida's conversion claim *arises* out of conduct alleged to have violated the TCPA. *See Garcia*, 969 So. 2d at 293. In sum, Defendants arguments regarding the merits of Florida First's claims are not properly considered in a duty to defend analysis where the insured's duty to defend is determined solely by the allegations against the insured, not the actual

11

facts or the insurer's version of the facts.  *See Irvine*, 630 So. 2d at 579–80.

    *ii.*    **Subsection Three**

    The conversion claim also arises out of Florida Statute § 365.1657.  § 365.1657 makes it "unlawful for any person to use a machine that electronically transmits facsimiles of documents through connection with a telephone network to transmit within this state unsolicited advertising material for the sale of any real property, goods, or services." This statute "prohibits or limits the sending, transmitting, communicating or distribution of material or information," falling under subsection three.  As discussed, the only reasonable interpretation of Florida First's allegations is that the conversion claim arises from the sending of unsolicited advertising faxes similar to Exhibit A.[4]

    Accordingly, the underlying complaint alleges a conversion that arose out of an alleged violation of the TCPA and § 365.1657 and therefore falls within both subsections of the Violation of Statutes Exclusion.[5]  American Casualty's Policies do not, therefore, give rise to a duty to defend the underlying lawsuit.  Because there is no duty to defend, there is no corresponding duty to indemnify.  *See Composite Structures, Inc.*, 903 F. Supp. 2d at 1290.

**B.**    **2007-2011 Policy Periods**

    Because the Violation of Statutes Exclusion precludes coverage of Florida First's claims, American Casualty's argument that the Policies in effect from June 18, 2007 to June 18, 2011 are

---

[4] § 365.1657 does not provide for a private right of action. *Condon v. Office Depot, Inc.*, 855 So. 2d 644, 649 (Fla. 2d DCA 2003).  However, to fall within the exclusion, the alleged damages need only *arise out of* an alleged violation of the statute.  Defendants also summarily argue that Florida First may still amend its complaint to remove this statutory reference, and therefore this issue is not ripe.  Whether there is a duty to defend, however, is determined solely by the allegations against the insured.  The operative complaint alleges that the conversion claim is brought in accordance with § 365.1657 and is controlling for the purposes of this declaratory judgment action.

[5] Because the exclusion applies to both claims, it is not necessary to decide whether the alleged damage would otherwise be covered by the Policies.

not implicated by the underlying lawsuit need not be reached.

Accordingly,

1.     Plaintiff/Counter-Defendant American Casualty Company of Reading, Pennsylvania's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 90) is **GRANTED**.

2.     The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of Plaintiff American Casualty Company of Reading, Pennsylvania and against Defendants Superior Pharmacy, LLC, Hilda Anadiume, Ike Okeke, Yvonne Okeke, and Florida First Financial Group, Inc.

The judgment shall include the following declaration: American Casualty Company of Reading, Pennsylvania Policy No. 2090658080, issued to Superior Pharmacy, LLC, for the periods from June 18, 2006 through June 18, 2011, does not provide coverage for the claims alleged in *Florida First Financial Group, Inc. v. Superior Pharmacy, et al.*, Case No. 11000731, in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, based on the Violation of Statutes Exclusion. American Casualty Company of Reading, Pennsylvania therefore has no duty to defend or indemnify Defendants Superior Pharmacy, LLC, Hilda Anadiume, Ike Okeke, or Yvonne Okeke.

3.     The Clerk is directed to **CLOSE** the file.

**DONE AND ORDERED** this 8th day of January, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

13